# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| DaCOSTA DANIELS, individually, and DaCOSTA DANIELS as mother, guardian, and next friend of Y.A., a minor child,<br><br>           Plaintiffs,<br>vs.<br><br>THE CITY OF SIOUX CITY, JOSHUA TYLER, individually and in his official capacity as a police officer for the City of Sioux City, and THE SIOUX CITY COMMUNITY SCHOOL DISTRICT,<br><br>           Defendants. | No. C 13-4068-MWB<br><br><br>**MEMORANDUM OPINION AND ORDER REGARDING THE DEFENDANT SCHOOL DISTRICT'S MOTION TO DISMISS** |

_____

This case involves federal constitutional claims, pursuant to 42 U.S.C. § 1983, alleging use of "excessive force" before and during the plaintiff's arrest, against the city police officer who arrested her and the city that employed him, and a state law claim for assault against the city police officer. It also involves state law claims against the city and a school district for intentional and negligent infliction of emotional distress on the plaintiff's daughter, arising from a separate incident, months later, in which a different city employee and a school district employee showed a video of the plaintiff's arrest to the plaintiff's daughter's middle school class. This case is now before me on the school district's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

More specifically, in a Complaint (docket no. 2), filed July 29, 2013, plaintiff DaCosta Daniels alleges that, on or about August 8, 2011, defendant City Police

Officer Joshua Tyler directed another city police officer to approach a stopped vehicle in which Daniels was located on suspicion that the person driving the vehicle did not have a valid driver's license. Daniels alleges that Officer Tyler then approached Daniels and "began to harass her regarding who was driving the vehicle and where that person was." Complaint at ¶ 12. Daniels alleges that she was placed in front of a police vehicle in sight of a dashboard camera, which recorded relevant events; that Officer Tyler did not want her to use her phone, even though she was not under arrest; that when she attempted to use her phone, Officer Tyler "attacked, grabbed, shoved, and punched Daniels," causing various injuries; and that she was then handcuffed and arrested. Based on these allegations, Daniels asserts, in Count I of her Complaint, that Officer Tyler's actions constituted an "assault"; in Count II, a claim pursuant to 42 U.S.C. § 1983, that Officer Tyler's actions constituted use of unconstitutional "excessive force" against her before and in the course of her arrest; and, in Count III, another claim pursuant to 42 U.S.C. § 1983, that the City of Sioux City is subject to "*Monell* liability" for Officer Tyler's actions based on a custom and policy of deliberate indifference to the rights of citizens.

In her Complaint, Daniels repleads all of the preceding paragraphs, then asserts, in Count IV, a claim of "intentional infliction of emotional distress" on her minor daughter, Y.A., and, in Count V, a claim of "negligent infliction of emotional distress" on Y.A. These claims are based on additional factual allegations that, on or about February 23, 2012, during class time, a City employee, Mr. Aesoph, and a Sioux City School District employee, teacher Michael Newburn, showed Y.A. and the rest of her class at West Middle School in Sioux City, Iowa, a video of her mother being "brutalized" by Officer Tyler. Mr. Aesoph and Mr. Newburn are not named as defendants in this action. Rather, the City and the Sioux City Community School

District are named as the defendants, and their liability is premised on wrongful acts of their employees committed while acting within the scope of their employment.[1]

On August 20, 2013, the City and Officer Tyler filed a joint Answer (docket no. 12), denying the claims against them and asserting various affirmative defenses. Also on August 20, 2013, the School District filed a Motion To Dismiss (docket no. 14), asserting lack of supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims against it in Counts IV, V, and VI, which the School District argued were the only claims against it. More specifically, the School District argues that the state law claims against it do not form part of the same case or controversy as the federal claims upon which this court's original jurisdiction is premised, because the state law claims against it are entirely different in nature and kind than the federal claims against the City and Officer Tyler. Specifically, the School District argues that the claims against the City and Officer Tyler are based on Officer Tyler's conduct toward Y.A.'s mother, while the claims against it are based on the showing of a video to Y.A.'s class, by a different City employee and a School District employee, on a separate occasion. The School District argues that the facts necessary to prove the claims against it have nothing to do with the facts necessary to prove the claims against the City and Officer Tyler and that the legal issues among the claims are entirely distinct. In short, the School District argues that resolution of the federal claims would have no impact on the resolution of the state law claims against it, or vice versa.

---

[1] In Count VI of her Complaint, Daniels seeks punitive damages on her claims.

In her Resistance (docket no. 18), filed September 6, 2013, Daniels admits that the only claims against the School District are the state law claims in Counts IV, V, and VI, but she argues that supplemental jurisdiction pursuant to § 1367(a) over those claims is proper. Daniels contends that establishing Y.A.'s claims will include an intensive, fact-specific analysis of the allegedly outrageous conduct on the part of the School District, which she argues depends, in part, on whether or not Officer Tyler used "excessive force" on or assaulted Daniels. Thus, she argues that Officer Tyler's acts constitute the common operative facts between her federal claims against Officer Tyler and the City and Y.A.'s state law claims against the School District. She also argues that all of the claims in her Complaint would normally be expected to be tried in one judicial proceeding, because her claims would have required the joinder of the School District to afford her full relief. Finally, she argues that fairness, practical considerations, and judicial economy will also be served by trying all of the claims in a single case.

On September 12, 2013, the School District filed a Reply (docket no. 20) in further support of its motion. In its Reply, the School District reiterates its contention that there is no common nucleus of operative fact between Daniels's federal claims and Y.A.'s state law claims. The School District argues that nothing about Y.A.'s claims of intentional or negligent infliction of emotional distress depends upon whether or not Officer Tyler used "excessive force" against Daniels—and Officer Tyler is not even named as a defendant on Y.A.'s state law claims. Indeed, the School District points out that Daniels has conceded that, even should Daniels lose her claims against Officer Tyler and the City, Y.A.'s claims could still proceed to a jury, because a jury could still find that the School District acted in reckless disregard of the probability of emotional distress to Y.A. from showing the video of her mother's arrest.

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a pre-answer motion to dismiss for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). How the court examines the pleadings and the facts on a Rule 12(b)(1) motion to dismiss depends upon whether the movant's challenge to subject matter jurisdiction is "facial" or "factual":

> On a facial attack, the court must accept all factual allegations in the pleadings as true and view them in the light most favorable to the non-moving party. *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir.2008); *see also United States v. Metropolitan St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir.2009) (when a party seeks to dismiss a suit for lack of standing, the court "'must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party,'" quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). On the other hand, when jurisdictional facts are in dispute, "[t]rial courts have 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).'" *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir.2008) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995)); *see also Precision Press, Inc. v. MLP U.S.A., Inc.*, 620 F.Supp.2d 981, 986–88 (N.D.Iowa 2009) (discussing, in detail, the differences between a facial and a factual challenge to subject matter jurisdiction). As this court has also noted, the proper course for a factual challenge is for the defendant to request an evidentiary hearing on the jurisdictional issue, so that the court can determine the matter, not simply rule on whether there is or is not enough evidence to have a trial on the issue. *Precision Press*, 620 F.Supp.2d at 988 (citing *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir.1990)).

*Farm-to-Consumer Legal Defense Fund v. Sebelius*, 734 F. Supp. 2d 688, 683 (N.D. Iowa 2010).

Here, the parties have not looked outside of the pleadings for support for their positions, but only argued whether, as a matter of law, there is a factual relationship between the federal and state law claims as required to support § 1367(a) supplemental jurisdiction over the state law claims against the School District. Furthermore, the parties have not submitted any materials in support of the Motion To Dismiss or the resistance to it outside of the pleadings, nor has the School District requested an evidentiary hearing on the question of subject matter jurisdiction.[2] Therefore, I will treat the School District's challenge to subject matter jurisdiction as a "facial" challenge. *See id.*

Turning to the requirements for the exercise of supplemental jurisdiction pursuant to § 1367(a), that statute provides, with exceptions not relevant here,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are *so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.* Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a) (emphasis added). As the Eighth Circuit Court of Appeals has explained,

> "Claims within the action are part of the same case or controversy if they 'derive from a common nucleus of operative fact.'" *Myers v. Richland County*, 429 F.3d 740,

---

[2] The School District did request oral arguments on its Motion To Dismiss. My crowded schedule has not permitted the timely scheduling of oral arguments, however, and I find the parties' written submissions to be adequate to resolve the issue. Therefore, the School District's Motion To Dismiss is deemed fully submitted on the written submissions.

6

> 746 (8th Cir.2005), quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). A plaintiff's claims derive from a common nucleus of operative fact if the "claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725, 86 S.Ct. 1130. Having original jurisdiction over [a plaintiff's action], the district court ha[s]d supplemental jurisdiction over [the plaintiff's] claims against [another defendant] (regardless of their eventual merit), as the claims against all defendants arose from the same facts. *See Northwestern Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1026 (6th Cir.2001); *Brazinski*, 6 F.3d at 1181–82. Once original jurisdiction exists, supplemental jurisdiction over all related claims is mandatory, absent certain statutory exceptions. *See Southern Council of Indus. Workers v. Ford*, 83 F.3d 966, 968 (8th Cir.1996) (per curiam); *McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir.1994).

*ABF Freight Sys., Inc. v. International Bhd. of Teamsters*, 645 F.3d 954, 963-64 (8th Cir. 2011); *and compare McRaven v. Sanders*, 577 F.3d 974, 984 (8th Cir. 2009) (describing the exercise of supplemental jurisdiction as a matter of discretion, even where the federal and state law claims derive from a common nucleus of operative fact).

In *ABF Freight System*, the court held that the exercise of supplemental jurisdiction over state law claims was proper, where all of the plaintiff's claims, including both federal claims under the Labor Management Relations Act and state law claims, were based on violations of a collective bargaining agreement, so that all arose from the same operative facts. *Id.* at 964. Similarly, in *OnePoint Solutions, L.L.C., v. Borchert*, 486 F.3d 342 (8th Cir. 2007), the court held that all of the plaintiff's state law claims—conversion, tortious interference with contract, money had and received, breach of fiduciary duty, civil theft under Minnesota Statute §§ 604.14, 609.52, and 609.53, unjust enrichment, and civil conspiracy—related to the same transactions in

which the defendants authorized payments to themselves from company funds after removal from their positions, so that all arose from the same operative facts as the state statutory claim, the only one that met the amount-in-controversy requirement for the federal court's original diversity jurisdiction, and that these claims would ordinarily be expected to be tried together. 486 F.3d at 350.

Here, an arrestee's federal claim of "excessive force," in violation of the Fourth and Fourteenth Amendments, has the following four elements: (1) the defendant used force against the plaintiff; (2) the force used was excessive because it was not reasonably necessary to stop the plaintiff, to arrest the plaintiff, or to take the plaintiff into custody; (3) as a direct result, the plaintiff was injured; and (4) the defendant was acting under color of state law. *See, e.g., Bady v. Murphy-Kjos*, 628 F.3d 1000, 1003-04 (8th Cir. 2011) (approving use of Eighth Circuit Model Civil Jury Instruction (now 4.10)); Eighth Circuit Model Civil Jury Instruction 4.10. The tort of *intentional* infliction of emotional distress, under Iowa law, requires proof of the following four elements: (1) outrageous conduct by the defendants; (2) the defendants' intentionally causing or recklessly disregarding of the probability of causing emotional distress; (3) severe or extreme emotional distress suffered by the plaintiff; and (4) actual and proximate causation of emotional distress by the defendants' outrageous conduct. *See Van Baale v. City of Des Moines*, 550 N.W.2d 153, 156 (Iowa 1996).[3] It seems plain

---

[3] I have considerable doubt that a cause of action for *negligent* infliction of emotional distress will lie outside of the context of bystander distress claims and medical malpractice claims. *See Doe v. Cherwitz*, 518 N.W.2d 362, 365 (Iowa 1994); *and compare Barnhill v. Davis*, 300 N.W.2d 104, 107-08 (Iowa 1981); *Oswald v. LeGrand*, 453 N.W.2d 634, 639-40 (Iowa 1990); *see generally Millington v. Kuba*, 532 N.W.2d 787, 793 (Iowa 1995).

that there is no "common nucleus of operative fact" between such claims, where the claims are based on the conduct of *different actors*, directed at *different victims*, in *different incidents* several months apart. Furthermore, as the elements of the offense indicate, nothing about the "outrageousness" of the *School District's employee's* conduct in showing the video to Y.A.'s middle school class turns, factually or legally, on whether or not *Officer Tyler's conduct* toward Daniels in the incident months earlier was "outrageous" or involved "excessive force." *Compare ABF Freight*, 645 F.3d at 964 (holding that claims, all of which involved violation of a collective bargaining agreement, arose from a common nucleus of operative fact, so that the exercise of supplemental jurisdiction over state law claims was proper); *OnePoint Solutions, L.L.C.*, 486 F.3d at 350 (holding that supplemental jurisdiction was proper over claims that were not within the federal court's original diversity jurisdiction, because all arose from the same incident in which the same defendants authorized payments to themselves from company funds after their dismissal).

Nor am I convinced that Y.A.'s claims of "infliction of emotion distress" against the School District (and a City employee) would ordinarily be expected to be tried in the same proceeding as Daniels's claim of "excessive force" against Officer Tyler and the City. *See OnePoint Solutions*, 486 F.3d at 350. As the School District points out, Officer Tyler is not a defendant on Y.A.'s "infliction of emotional distress" claims, and those claims arise from the conduct of different individuals, Mr. Aesoph and Mr. Newburn, in a different incident, even if the City may be liable for Mr. Aesoph's misconduct, as well as Officer Tyler's, albeit on different theories.

Daniels appears to argue that the School District is a necessary party on an "infliction of emotional distress" claim arising from the incident involving the showing of the video to Y.A.'s class, because she cannot be afforded complete relief otherwise, if the only defendant on that claim is the City, but the misconduct of a School District

9

employee was also involved. Section 1367(a) does recognize that "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." This argument is a red herring here, however, because it is doubtful that the "infliction of emotional distress" claims *against the City* are properly within this court's supplemental jurisdiction, either, where the City's liability on the "infliction of emotional distress" claims is based on different conduct of different employees in different incidents and different legal theories than it is on the "excessive force" claim.

I conclude that this court does not have supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the plaintiffs' "infliction of emotional distress" claims, the only claims asserted against the School District.

THEREFORE, the School District's August 20, 2013, Motion To Dismiss (docket no. 14) is **granted**, and the claims against the School District are **dismissed** *without prejudice* for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED**.

**DATED** this 8th day of November, 2013.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA